STEINES *et al. v.* MANHATTAN LIFE INS. Co.

*(Circuit Court, E. D. Missouri, E. D.*    March 26, 1888.)

1. EQUITY—FRAUD—LACHES.
     A bill in equity on a life insurance policy issued in 1854, alleging that at the time of the issuance of the policy the company agreed to distribute the surplus every three years in interest-bearing scrip; that in 1857 the company fraudulently sent plaintiff a document which was simply a statement of a permanent addition to the policy, but which she, owing to her imperfect understanding of the English language, supposed to be a statement of the scrip; that she received similar documents in 1860, 1863, and 1866, the true nature of which she has only recently learned; but which fails to set out a copy of the policy, or the alleged documents, or that she remained ignorant of the English language after 1857,—fails to show grounds for equitable interference, after the lapse of so many years, and the consequent changed condition of the parties.

2. SAME—LACHES OF MARRIED WOMAN.
     A bill in equity by a married woman against an insurance company, alleging that when the policy was issued the company agreed to distribute to her a portion of its dividends; that she always paid the premiums until 1866, when, on account of her sickness, her husband was sent to pay them; that the agent of the company procured him to sign an application for more in-

surance, which it was agreed should not be binding on her until assented to by her; that instead of being an application for more insurance, it was a waiver of future dividends in consideration of a permanent addition to the policy; that she did not discover this fact until 1874; that she then requested the company not to send her any more premium notes, but the company still sent the notes, which she continued to sign and pay till 1886,—fails to show any ground for equitable relief; the wife being all the time capable, by the law of the place where she resided, of making contracts, and of maintaining an action on them.

In Equity.    On demurrer to bill.
*F. T. Ledegerber*, for complainant.
*Given Campbell*, for defendant.

BREWER, J.    In this case a demurrer to the bill was argued the other day.    The facts are these:   In 1854, 34 years ago, this complainant insured the life of her husband for $2,000.    The insured is still living. She claims that she has been defrauded by the wrongful conduct of the insurance company in two particulars:   *First.* She alleges that prior to the contract she received an annual report from the insurance company, which report stated that every three years the premium surplus would be distributed, seven-eighths to the insured, in scrip bearing an annual interest not exceeding 6 per cent.; that instead of scrip the same might be converted into permanent insurance for life, without any annual premium, or applied to the annual reduction of the future premiums on the policy; that relying upon that representation, she made a contract of insurance by which the company agreed to give her scrip. She does not set out a copy of such contract, saying that it is immaterial, but alleges in terms that it provided for the issue of scrip; that in 1857 a document was sent to her, on the back of which was indorsed these words: "The Manhattan Life Insurance Company, Frederick Steines, bonus, 1857, policy No. 3063, $124;" and that, inasmuch as she imperfectly understood the English language, she at the time supposed this was a statement of the scrip to which she was entitled under the contract; that in 1860, 1863, 1866, she received similar documents; that she has lately, on consultation with counsel, found that they were not interest-bearing scrip, but simply statements of permanent additions to the policy.    She further alleges that the premium which she was called upon to pay was $99, which she paid by giving one-half cash, and one-half in a note bearing certain interest; that she has annually, from that time on to the commencement of this suit, given a like note, and paid in cash the other half, as well as the interest on the notes.    Those notes have accumulated, so that her last payment in cash in the year 1886 was $148.38.

Now, upon these facts, the first thing to be noticed is this: that this policy, in its inception, and in its earlier history, was one burdensome to the defendant, and likely to be profitable to the complainant.    If the insured had died within the first two or three years, the company, having received but two or three hundred dollars, would have been compelled to pay $2,000.    Thirty-four years having run, by the repeated pay-

ment of premiums on her part and the accumulation of interest-bearing notes the policy has become beneficial to the defendant, and burdensome to the complainant. One who, under these circumstances, comes into a court of equity, charging a wrong on the part of the defendant in the early history of the transactions, should make very clear the fact of the wrong, as well as her ignorance thereof. If, when the policy was apparently beneficial to her, she was content to permit many years to elapse before she complained, and the lapse of time has changed its pecuniary benefit, it is simply fair that her claim of wrong, as well as her ignorance of the wrong, should be made perfectly apparent. Now, it may be that when the policy is presented, it will disclose a statement of just the rights she received under it, and on the face of it may contain a stipulation expressed in clear and unmistakable language that she was to have a permanent addition to the policy, instead of the scrip mentioned in the report which she read. If it does not, then she has failed to give a copy of any one of those triennial statements sent to her. She says she received documents indorsed with certain words, and gives the indorsements; but what was on the face of those triennial statements is omitted from the bill. *Non constat* but that upon the very face of each one was the clear and unmistakable affirmation of a permanent addition to the policy, instead of an interest-bearing scrip. She says that at the time she received the first, by reason of an imperfect acquaintance with our language, and relying upon the contract which she had made, she supposed that it was scrip. She does not tell us that that imperfect acquaintance with our language has continued, or that she did not in 1860 have perfect familiarity with it; so that, if she had read this triennial statement, she would have been clearly advised that it proposed not scrip, but a permanent addition to the policy. These omissions are important. They are fatal; because, as I said, she comes after the lapse of these many years, in that changed condition of the policy, to assert a wrong perpetrated 30 years ago.

A further charge is this: She says that she herself paid the premium from year to year, until 1866, 20 years before the commencement of this suit, and that then, being ill, she sent her husband, the insured, to to pay it; that the agent asked him to sign what the agent said was an application for more insurance,—a larger policy; that he signed such application, the agent reading over what purported to be an application for such increased insurance, but at the same time said to the agent that he had no authority to bind his wife, and that it was distinctly agreed between them that it should not be binding until she had been informed and expressly assented to it; that, instead of its being an application for increased insurance, it was in fact a surrender of all claims for future dividends, in consideration of a single large dividend of four hundred and odd dollars in the way of a permanent addition to the policy; that she never assented to that, and never knew what had been done, until 1874; that when, in 1869, she failed to get a statement of the expected scrip, she made inquiry and was told by the agent that she would be entitled to no more scrip because her husband was over 68 years of age;

and she knew no better until 1874, when she was informed that she had surrendered all claims to future dividends.   When thus informed in 1874, she wrote to the company, requesting it to send no more notes to her.   Notwithstanding her request the company continued to send out the notes, and she thereafter, up to 1886, signed the annual notes and paid the premiums.   She also copies a statement from the annual report received and examined by her before the policy was issued, which states that "when a policy is taken for life, and the yearly premium amounts to or exceeds forty dollars, one-half of each yearly premium for the first five years may remain as a permanent loan at seven per cent. interest, so long as the premium is regularly paid; the same to be deducted from the amount insured, unless previously paid off or canceled by the policy."   I do not see what particular force that has.   It was a privilege given by the company to the insured, to pay for five years one-half in cash and one-half in note.   It certainly gave the company the right at the end of five years to insist upon full payment in cash.   It may be that it gave her also a similar right to make full payment in cash if she had desired; and if thereafter, when the company sent these notes, instead of signing them she had sent the full payment in cash, and the company had refused to receive it, it might well be that she could maintain some action to compel its receipt.   But instead of doing anything of the kind, she simply sent her request; and when the company forwarded the notes she signed them, and paid the money, and has been doing that for 12 years.   Now, if it be true, just as she says, (and of course, on demurrer it must be taken as true,) that in 1866 the company wrongfully obtained from her husband, the insured, a surrender of her right to future dividends, it is clear that she was soon thereafter, in 1869, by the non-receipt of any dividends, if not informed, at least put in possession of facts which should put one upon inquiry.   The information which she says she then received,—that her husband was over 68, and therefore there were no more dividends,—a moment's reading of the policy would have verified or disproved.   Be that as it may, in 1874 she knew the facts, and for 12 years was content to go on, leaving the policy in force, paying all that by its terms was called for; and in 1886, 32 years after the policy was issued, and after she had paid the premiums during all these years, for the first time she comes into court, and says, "I have been wronged."   Now, under the statutes of Missouri, a married woman was, at the time this policy was issued, authorized to contract for insurance.   She alleges not that her husband, but that she, herself, made this contract with the insurance company; that she was the principal in the contract.   The statute also provides that she may sue, though when she sues, it is true, her husband must join.   It might be that, if a wife was under the full disability of the old common law, so that she had no right to contract, and no right to sue, neither limitation nor laches could be imputed to her, and perhaps no estoppel; but giving the right to contract, and the right, qualified though it be, to sue, I think it must be held that estoppel will bind her, and that limitations and laches will run against her.   So, upon a bill filed after a lapse of 32 years, not showing

that she was ignorant of the wrongs, but, on the contrary, by plain implication showing that she must have been familiar with the one wrong nearly 30 years ago, and absolutely showing that she was informed of all the wrongs more than 12 years before she brought the suit, it seems no more than justice to hold that as against her, as against any other contracting party, the doctrine of laches must prevail.

This is one of those cases where the insured has lived a great, perhaps an unexpected, length of time; and the policy, which in the inception was one beneficial to her and prejudicial to the company, has, by the lapse of time, reversed its situation, and now the company has a contract which is beneficial to it, and which is prejudicial to her. Under these circumstances, I think the demurrer should be sustained, and it is so ordered.